DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Helios Llanderal-Raya, appeals from the judgment entry of the Medina County Court of Common Pleas, which denied his motion to suppress. This Court affirms.
 I. {¶ 2} Appellant was indicted on one count of possession of cocaine, in violation of R.C. 2925.11(A)(C)(4)(f), a felony of the first degree, with a major drug offender specification, pursuant to R.C. 2941.1410. Appellant pled not guilty to the charge and specification.
 {¶ 3} On April 9, 2004, appellant filed a motion to suppress any and all evidence that resulted from the activities of the police on the day of the alleged crime. The trial court held a hearing on appellant's motion to suppress on June 1 and 18, 2004. The trial court denied appellant's motion to suppress on June 24, 2004 and again on July 1, 2004 after reconsideration.
 {¶ 4} On September 8, 2004, appellant withdrew his previous plea of not guilty and entered a plea of no contest to the possession of cocaine charge in exchange for the State's dismissal of the major drug offender specification. The trial court found appellant guilty of one count of possession of cocaine and sentenced appellant accordingly.
 {¶ 5} Appellant timely appeals from the trial court's judgment entry, which denied his motion to suppress. Appellant sets forth three assignments of error for review. This Court addresses the assignments of error out of order for ease of review.
 II. ASSIGNMENT OF ERROR II
"DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED THE MOTION TO SUPPRESS CONCERNING THE WARRANTLESS DISMANTLING OF DEFENDANT'S VEHICLE."
 {¶ 6} Appellant argues that the search of the vehicle without a warrant was improper and in violation of appellant's constitutional rights. This Court disagrees.
 {¶ 7} The State counters that appellant has no standing to object to the search of the vehicle, because appellant was not in lawful possession of the vehicle at the time. This Court agrees.
 {¶ 8} On February 19, 2004, State Trooper John Grewal was conducting a rest check at the rest area on the southbound side of Interstate 71 in Brunswick Hills Township, Medina County, Ohio. He called out the plates of all vehicles at the rest area to dispatch. Trooper Grewal then made a traffic stop of a speeding vehicle and returned to the rest area. All the license plates that he had earlier called in to dispatch checked out, except for the plate on a red Dodge Intrepid with Texas license plates. The Intrepid's plates came back with "no information."
 {¶ 9} Trooper Grewal approached the Intrepid to find appellant asleep behind the wheel. Trooper Grewal testified that he approached the vehicle both for a health and welfare check of any occupant and to determine the status of the car whose plates provided "no information." Grewal asked appellant if he was okay. Appellant stated that he was fine, and that he was driving from Texas to see his girlfriend in Cleveland. Grewal became concerned, because appellant was parked on the southbound side of Interstate 71. Had appellant been traveling to Cleveland, he would have been on the northbound side of the interstate. Appellant explained that he had gone to Cleveland then turned around, because he did not know how to get to his girlfriend's home. Appellant stated that he decided to wait in a more secure area for his girlfriend's phone call with directions.
 {¶ 10} Appellant further explained to Trooper Grewal that he was driving his girlfriend's mother's car. Appellant said that the mother lived in Texas. Appellant provided his driver's license to Grewal, who noted that appellant possessed a California state license. Appellant confirmed that he lived in California. Trooper Grewal then testified that appellant's story did not make sense to him.
 {¶ 11} Trooper Grewal asked whether appellant had permission to drive the Intrepid. Appellant asserted that he did, and he produced insurance papers for the vehicle. Upon inquiry, appellant was unable to give a phone number for the car's owner. Trooper Grewal testified that he found it very unusual that appellant would not have the phone number of the owner of the vehicle, if she was the mother of his girlfriend. Based on the irregularity of appellant's story, Trooper Grewal testified that he suspected that the vehicle was stolen.
 {¶ 12} Trooper Grewal called dispatch to request a phone number for the person listed on the insurance papers. He called the number in Texas and spoke with the owner's sister, who informed him that the owner was at work and would be home in several hours. The owner's sister informed Grewal that she had never heard of appellant, that the family did not know the current location of the Intrepid, and that the owner's children all lived in Texas, not Cleveland. At that point, Trooper Grewal believed that appellant did not have permission to use the Intrepid.
 {¶ 13} When appellant began to change his story about what he was doing, Trooper Grewal stopped him and read him his rights pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 16 L.Ed.2d 694. After appellant informed him that he did not know the vehicle's owner and that he was being paid by "some friends of friends" to drive the car from Texas to Cleveland, Trooper Grewal placed appellant under arrest. Appellant was transported to the highway patrol station and the Intrepid was towed. Trooper Grewal testified that once appellant was back at the station, another officer made contact with the vehicle's owner, who confirmed that appellant did not have permission to use the vehicle. Therefore, notwithstanding the lack of any report that the Intrepid had been stolen, the vehicle was in fact stolen.
 {¶ 14} This Court first notes that the State argued in its opposition to appellant's motion to suppress that appellant had no standing to object to the search of the vehicle. Therefore, appellant's assertion that the State waived this argument on appeal is not well taken.
 {¶ 15} One has no legitimate expectation of privacy in an automobile he does not own or have permission to use. State v. Crickon (1988),43 Ohio App.3d 171, 172, citing United States v. Salvucci (1980),448 U.S. 83, 65 L.Ed.2d 619; Rakas v. Illinois (1978), 439 U.S. 128,58 L.Ed.2d 387, rehearing denied (1979), 439 U.S. 1122 (search of an automobile); Katz v. United States (1967), 389 U.S. 347, 19 L.Ed.2d 576. Moreover, "most courts agree that an occupant of a vehicle cannot be said to have standing by virtue of his presence if he is in possession of a stolen or otherwise illegally possessed or controlled vehicle." State v.Williams (Oct. 24, 1980), 3d Dist. No. 11-79-12.
 {¶ 16} In this case, where appellant admitted that he did not have permission to use the Intrepid, where the owner's sister asserted that the family did not know where the vehicle was and that they did not know appellant, and where the owner later confirmed that appellant did not have permission to use the vehicle, appellant has no standing to object to the search of the vehicle. Appellant's second assignment of error is overruled.
 {¶ 17} This Court consolidates appellant's remaining assignments of error for review.
 ASSIGNMENT OF ERROR I
"DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED DEFENDANT'S MOTION TO SUPPRESS."
 ASSIGNMENT OF ERROR III
"DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED DEFENDANT'S MOTION TO SUPPRESS ANY STATEMENTS MADE BY DEFENDANT."
 {¶ 18} Appellant argues that the trial court erred by denying his motion to suppress, because Trooper Grewal improperly detained and questioned appellant for an excessive period of time. Appellant further argues that Trooper Grewal's questioning of appellant was unconstitutional, because appellant did not voluntarily waive hisMiranda rights. This Court disagrees.
 {¶ 19} "The review of a motion to suppress presents a mixed question of fact and law for an appellate court." State v. Farris, 9th Dist. No. 03CA0022, 2004-Ohio-826, at ¶ 7; State v. Long (1998),127 Ohio App.3d 328, 332. This Court must accept the trial court's factual determinations made during the suppression, so long as they are supported by competent and credible evidence. Farris at ¶ 7; State v.Robinson (Oct. 25, 2000), 9th Dist. No. 19905. This Court, however, must review the trial court's application of the law to those facts de novo.Farris at ¶ 7; State v. Searls (1997), 118 Ohio App.3d 739, 741.
 {¶ 20} The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated[.]" The Ohio courts have recognized, however, that "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." Terry v. Ohio (1968), 392 U.S. 1,19, 20 L.Ed.2d 889. This Court has previously discussed the three categories of police-citizen contact set out by the United States Supreme Court, which identify situations relevant to the instant appeal. Akronv. Harvey (Dec. 20, 2000), 9th Dist. No. 20016 (Carr, J., dissenting on a different issue). Citing Florida v. Royer (1982), 460 U.S. 491, 501-07,75 L.Ed.2d 229, we stated in Harvey:
"The first type of encounter is a consensual encounter. `Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away.' `The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter.' In [UnitedStates v.] Mendenhall [(1980), 446 U.S. 544, 554, 64 L.Ed.2d 497] the United States Supreme Court gave examples of circumstances that would indicate a seizure of a person as follows: `the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' The United States Supreme Court went on to note that `in the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person.'
"The second type of encounter is a `Terry stop' or an investigatory detention. The investigatory detention is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest. The investigatory detention must be limited in duration and scope and can last only as long as is necessary for an officer to confirm or dispel his suspicions that criminal activity is afoot. A police officer may perform an investigatory detention so long as the officer has a reasonable, articulable suspicion of criminal activity.
The third type of encounter involves a seizure that equivocates an arrest. To perform such a seizure an officer must have probable cause." (Internal citations omitted.)
 {¶ 21} "Any voluntary responses given during a consensual encounter may be used against an individual in the course of a criminal prosecution." Harvey, citing Mendenhall, 446 U.S. at 559-60; Florida v.Bostick (1991), 501 U.S. 429, 439, 115 L.Ed.2d 389.
 {¶ 22} In this case, Trooper Grewal initially approached appellant in a public place to ensure appellant's safety and to investigate the status of the vehicle whose license plate presented "no information." Grewal did not stop appellant, because appellant's vehicle was already parked in a public rest area. During his initial conversation with appellant, Trooper Grewal did not use physical force, display a weapon, touch appellant, use any language or tone to compel appellant's responses, or otherwise indicate that appellant's compliance with the trooper's request for information was compelled.
 {¶ 23} Grewal inquired whether appellant was okay, and appellant volunteered that he was heading to Cleveland from Texas to see his girlfriend. Appellant's story quickly became illogical, because appellant was apparently traveling away from Cleveland, rather than towards the city. As appellant added further illogical details, Trooper Grewal became suspicious that appellant was lying. Appellant was cooperative and continued responding to Grewal's requests for clarification. The circumstances surrounding this questioning indicate that Trooper Grewal and appellant were engaged in a consensual encounter. There was nothing to indicate that a reasonable person would not have felt free to decline Trooper Grewal's requests for information. In the absence of such evidence, this Court cannot say that Trooper Grewal's initial five to six-minute conversation with appellant amounted to a seizure of appellant as a matter of law. Therefore, the Fourth Amendment protections were not implicated in regard to appellant's conversation with Grewal, while appellant remained in the Intrepid. Therefore, the trial court did not err by denying appellant's motion to suppress in regard to appellant's statements made during the initial consensual encounter.
 {¶ 24} After the initial five to six-minute consensual encounter, Trooper Grewal asked appellant to come back to the patrol car with him. Appellant responded, "Sure." Trooper Grewal testified that, at that point, he was concerned that appellant was driving a stolen vehicle, because appellant's story made no sense. Appellant could not produce a phone number for the car's owner in Texas. Appellant could not produce a phone number for his girlfriend in Cleveland. Appellant was traveling south, although he asserted that his destination was north of the rest area. Appellant possessed a California driver's license, but was driving a car with Texas plates, and he could not produce a registration for the vehicle. Based on the irregularity of appellant's story, Trooper Grewal had a reasonable, articulable suspicion that appellant was driving a stolen vehicle, and he properly initiated an investigatory detention of appellant.
 {¶ 25} Trooper Grewal continued to question appellant, as appellant sat in the back of the unlocked patrol car. Grewal then continued his investigation regarding the status of the Intrepid. Dispatch responded within five minutes that the vehicle was "negative NCIC," meaning it had not been reported stolen. Grewal testified, however, that based on his seven years of experience as a patrolman, he knew that the lack of a stolen vehicle report did not necessarily mean that a vehicle was not stolen or being improperly used without permission of the owner. Trooper Grewal then reasonably attempted to contact the vehicle's owner, based on information on the vehicle's insurance papers.
 {¶ 26} Trooper Grewal was able to make contact with the vehicle owner's sister in Texas within a couple minutes. She stated that the owner would not be home for a few hours, but she clarified that the family did not know the vehicle's whereabouts. She further asserted that appellant was not known by her family, and that the vehicle's owner had no daughter living in Cleveland. Based on this information, Trooper Grewal accused appellant of lying. Appellant began to tell a different story, but Grewal stopped him, placed him under arrest and read him his Miranda
rights. Approximately seventeen minutes elapsed between the beginning of Grewal's investigatory detention of appellant and his arrest. Given the irregularity of appellant's story, Trooper Grewal had a reasonable, articulable suspicion of criminal activity. Under the circumstances, this Court cannot say that Grewal detained appellant for an excessive period of time or for a time longer than necessary to confirm his suspicions that appellant was driving a stolen vehicle. Therefore, the detention was proper, and the trial court did not err by denying appellant's motion to suppress appellant's statements made during his period of investigatory detention.
 {¶ 27} Appellant further argues that, once Trooper Grewal placed appellant under arrest and read him his Miranda rights, Grewal failed to secure appellant's knowing, voluntary and intelligent waiver of his rights prior to appellant's further statements.
 {¶ 28} The United States Supreme Court case of Miranda v. Arizona
(1966), 384 U.S. 436, 16 L.Ed.2d 694, effects a protection of a criminal defendant's Fifth Amendment right against self-incrimination "by prohibiting admission of inculpatory statements resulting from custodial interrogation unless law enforcement officers have followed enumerated procedural safeguards." Farris at ¶ 9. Prior to any custodial interrogation, the law enforcement officer must inform the criminal defendant that he has the right to remain silent, that any statement he makes may be used as evidence against him, and that he has the right to the presence of an attorney. Miranda, 384 U.S. at 468-70. In determining whether appellant's statements made after the Miranda warning are admissible, this Court must determine whether appellant's statements were voluntary and whether appellant voluntarily, knowingly and intelligently waived his Miranda rights. Farris at ¶ 9, citing State v. Clark (1988),38 Ohio St.3d 252, 261.
"In determining whether a statement was voluntary, the court considers the totality of the circumstances. Clark, 38 Ohio St.3d at 261. Factors under this test may include `the age, mentality, and prior criminal experience of the accused; the length, intensity and frequency of the interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.' State v. Edwards (1976),49 Ohio St.2d 31, 40-41, citing Brown v. United States (C.A.10, 1966),356 F.2d 230, 232. Generally speaking, for an inculpatory statement after valid Miranda warnings to be considered involuntary, law enforcement officers must have engaged in some form of coercive action. Colorado v.Connelly (1986), 479 U.S. 157, 167, 93 L.Ed.2d 473." Farris at ¶ 10.
 {¶ 29} In this case, appellant's statements made after the Miranda
warnings were voluntary. Trooper Grewal did not coerce, threaten or offer inducements to appellant to compel any statements. Nor did Grewal physically deprive appellant of anything. In fact, Grewal ensured that appellant was warm enough in the patrol car, because appellant had traveled to Ohio from Texas in winter without a coat. Appellant's tone and demeanor during questioning was always cooperative and responsive. Under the totality of the circumstances, this Court finds that appellant's statements were voluntarily made.
 {¶ 30} This Court must next determine whether appellant knowingly, voluntarily and intelligently waived his Miranda rights. Where the State alleges that appellant waived his rights, "it must prove, by a preponderance of the evidence, that [appellant] knowingly, voluntarily, and intelligently waived those rights based on the totality of the circumstances." Farris at ¶ 13, citing State v. Gumm (1995),73 Ohio St.3d 413, 429. This Court has recognized that an express or written statement of waiver is not required to find a valid waiver ofMiranda rights. Farris at ¶ 13, citing North Carolina v. Butler (1979),441 U.S. 369, 373, 60 L.Ed.2d 286. In fact, a defendant's waiver may be clearly inferred in some cases from his words and actions during the interrogation. Id. "A suspect's decision to waive his Fifth Amendment privilege against compulsory self-incrimination is made voluntarily absent evidence that his will was overborne and capacity for self-determination was critically impaired because of coercive police conduct." State v.Dailey (1990), 53 Ohio St.3d 88, paragraph two of the syllabus.
 {¶ 31} In this case, Trooper Grewal immediately followed his recitation of appellant's rights with the statement, "Do you understand your rights? Okay. So, what's going on?" Neither Trooper Grewal nor appellant were visible on the dashboard camera videotape, because they were sitting inside the vehicle. Therefore, it is unknown whether appellant visually indicated his understanding and waiver. However, appellant did not indicate verbally that he wished to exercise any of hisMiranda rights. Rather, appellant was cooperative and continued to speak freely to Trooper Grewal, informing him that he was being paid an indeterminate sum to drive the Intrepid from Texas to Ohio.
 {¶ 32} Further, there is nothing to indicate that Trooper Grewal coerced appellant in any way into making any statements. Grewal did not threaten appellant, raise his voice, cajole appellant, or do anything else to indicate to this Court that appellant's will was overborne by Grewal's actions.
 {¶ 33} Based on the totality of the circumstances, this Court finds that appellant's statements were voluntary and that he knowingly, voluntarily and intelligently waived his Miranda rights. Accordingly, this Court finds that the trial court did not err by denying appellant's motion to suppress. Appellant's first and third assignments of error are overruled.
 III. {¶ 34} Appellant's assignments of error are overruled. Accordingly, the judgment entry of the Medina County Court of Common Pleas, which denied appellant's motion to suppress is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Whitmore, P.J. Batchelder, J. Concur.