DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, the State of Ohio, appeals the judgment of the Summit County Court of Common Pleas granting Appellee's Motion to Suppress. This Court reverses.
 I. {¶ 2} On November 24, 2005, Appellee, Donald Juan Patterson, was arrested in a Denny's Restaurant parking lot for possession of marijuana, in violation of R.C. 2925.11 and driving under suspension, in violation of R.C. 4510.11. Appellee entered a plea of "not guilty" on December 7, 2005.
 {¶ 3} On January 10, 2006, Appellee filed a motion to suppress all evidence arising from his stop, arrest, detention and the search of his motor vehicle. Appellee argued that these items should be suppressed because the evidence was obtained during an unlawful stop wherein the officers lacked reasonable and articulable suspicion that Appellee was engaged in any unlawful activity. Further, Appellee argued that the inventory search of his motor vehicle was unnecessary and was a pretext for an unauthorized investigative search.
 {¶ 4} During the suppression hearing, held February 8, 2006 in the Summit County Court of Common Pleas, the trial court heard testimony from Deputy Sam Ferracane, Jr. ("Deputy Ferracane") of the Summit County Sheriff's Department. Deputy Ferracane testified that he was employed by the restaurant as an off-duty officer and therefore had particular knowledge of the restaurant and parking lot. On the evening in question, he was not working for Denny's but stopped at the restaurant with his partner to purchase a beverage. The restaurant was open to the public twenty-four hours a day. Deputy Ferracane testified that he had parked his cruiser near the only patron entrance on the south side of the restaurant. The parking lot was well lit and extended all the way around the building. Further, Deputy Ferracane testified that there were several parking spots open and that the restaurant was moderately busy.
 {¶ 5} The deputies left the restaurant at approximately 3:10 a.m., after being inside for about 15-20 minutes. As the deputies backed out of their parking space, they "noticed [a] vehicle running with its windows fogged up and just its parking lights on in a parking space." [error sic]. Deputy Ferracane further testified that because the windows were fogged up and the car was running, it appeared to him that the vehicle had been sitting there for a long time. The vehicle in question was parked approximately 100 feet from the front entrance on the east side of the restaurant near several employee vehicles. Deputy Ferracane testified that the vehicle "was parked in the parking spot, the farthest one in the back." Because the front windows and most of the back windows were fogged up, Deputy Ferracane testified he could not see inside that vehicle and that he had no idea what was going on inside the car. The deputies then decided to investigate further and pulled their cruiser up to the front of the vehicle and turned on their red and blue flashers. Deputy Ferracane testified that there was about a six foot gap between the front of his cruiser and the front of the subject vehicle. He further testified that he and his partner approached Appellee based on several factors including: (1) Deputy Ferracane's familiarity with the restaurant, (2) the location of Appellee's vehicle at the back of the building and away from the entrance, (3) the fact that the car was running with its parking lights on and the windows fogged. At this point "we called it out on our radio. I turned the flashers on, we exited the vehicle; and at that time we knew it was a black male because he turned the car off and exited the vehicle real quick and started walking away from the car." The deputies found this behavior suspicious. Deputy Ferracane then began to talk to Appellant who admitted his driver's license was suspended. After a safety pat-down search, Deputy Ferracane discovered marijuana in Appellant's pocket. The deputies discovered more marijuana in the vehicle while conducting the inventory search.
 {¶ 6} The trial court granted Appellee's motion on March 2, 2006 and held that there was not a reasonable and articulable suspicion adequate to justify the initial stop of Appellee. Finding the initial stop unlawful, the trial court found the subsequent inventory search of the vehicle unlawful and suppressed the evidence flowing from the arrest. The State timely filed its notice of appeal on March 6, 2006, asserting one assignment of error.
 II. ASSIGNMENT OF ERROR
"THE TRIAL COURT COMMITTED ERROR WHEN SUPPRESSING THE EVIDENCE IN THIS CASE."
 {¶ 7} In its sole assignment of error, the State argues that the trial court committed error in granting Appellee's motion to suppress evidence obtained during the stop, contending that the officers had the reasonable suspicion necessary to justify the stop. The State specifically argues that Deputy Ferracane's particular knowledge of the Denny's Restaurant and parking lot along with the observations made by both officers on the night of the stop created reasonable suspicion that unlawful activity was afoot and justified the stop. We agree that the trial court erred, but base our reasoning on different grounds.
 {¶ 8} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. State v. Hopfer
(1996), 112 Ohio App.3d 521, 548. Further, an appellate court must give deference to the "consequent inferences and conclusions drawn by the trial court from the factual circumstances as presented by these witnesses." State v. Prunchak, 9th Dist. No. 04CA0070-M, 2005-Ohio-869, at ¶ 18. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. State v. Guysinger
(1993), 86 Ohio App.3d 592, 594. "The trial court's legal conclusions, however, are afforded no deference, but are reviewedde novo." State v. Russell (1998), 127 Ohio App.3d 414, 416. (Italics sic).
 {¶ 9} The trial court's journal entry granting Appellee's motion to suppress contained the following findings of fact:
"[O]n November 24, 2005, [Deputy Ferracane] spotted a vehicle parked at the rear of Denny's parking lot as he and his partner were exiting the parking lot in their cruiser around 3:10 A.M. The Denny's restaurant was open at the time. The deputy testified that the vehicle's windows were fogged up, the parking lights were on, and the car was running. He testified that he could see a person sitting in the driver's seat of the car. He said he believed the vehicle had been there awhile since the windows were fogged up. The deputy then pulled his cruiser up to the vehicle with its blue and red lights flashing. As the deputies approached the vehicle, Defendant exited his car and walked past the deputies toward the Denny's entrance. At that point the deputies asked Defendant if everything was all right. Defendant told the deputies that he was waiting for a girl. The deputies then asked Defendant why he exited his car. Defendant did not provide a reason. At that point the deputies asked Defendant for a photo ID. Defendant said he didn't have a license because it had been suspended. The deputies told Defendant that the car would probably be towed and he would get a ticket for Driving Under Suspension. The deputies then patted Defendant down as a safety precaution and placed him in the back of their cruiser. After that, the deputies proceeded to inventory the vehicle since it was going to be impounded."
 {¶ 10} After a review of the record, we find that the trial court's factual determinations are supported by competent, credible evidence. The transcript of the suppression hearing supports the trial court's findings of fact. Accordingly, we turn to the trial court's legal conclusions to conduct a de novo review. See Russell, 127 Ohio App.3d at 416.
 {¶ 11} The Fourth Amendment to the United States Constitution provides in part that "[t]he right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated[.]" The Ohio courts have recognized, however, that "not all personal intercourse between policemen and citizens involves `seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a `seizure' has occurred." State v. Llanderal-Raya, 9th Dist. No. 04CA0079-M, 2005-Ohio-3306, at ¶ 20 quoting Terry v. Ohio
(1968), 392 U.S. 1, 19. This Court has previously discussed the three categories of police-citizen contact set out by the United States Supreme Court in Florida v. Royer (1982), 460 U.S. 491,501-07, to identify the situations where the Fourth Amendment guarantees are implicated. Llanderal-Raya, supra, at ¶ 20, citing Akron v. Harvey (Dec. 20, 2000), 9th Dist. No. 20016, at *1-2 (Carr, J., dissenting on a different issue). InLlanderal-Raya, we discussed the three types of encounters: (1) consensual, (2) investigative or "Terry stop" and (3) seizures that equivocate an arrest. Llanderal-Raya, supra, at ¶ 20
 {¶ 12} The first category of police-citizen contact is a consensual encounter. "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." State v. Taylor (1995),106 Ohio App.3d 741, 747, citing United States v. Mendenhall (1980),446 U.S. 544, 553. "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Taylor, 106 Ohio App.3d at 747-48. In Mendenhall
the United States Supreme Court gave examples of circumstances that would indicate a seizure as follows: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall,446 U.S. at 554. Further, the United States Supreme Court noted that "[i]n the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." Id. at 555.
 {¶ 13} The second category of police-citizen contact is a "Terry stop" or an investigatory detention. Royer,460 U.S. at 511. This type of contact is more intrusive than a consensual encounter but less intrusive than a formal custodial arrest.Harvey, supra, at *2. It must be limited in duration and scope and can last only as long as is necessary for an officer to confirm or dispel his suspicions that criminal activity is afoot. Id. An officer may perform an investigatory detention if the officer has a reasonable, articulable suspicion of criminal activity. Terry, 392 U.S. at 21.
 {¶ 14} The last category of police-citizen contact involves a seizure that equivocates an arrest. State v. Barker (1978), 53 Ohio St.2d 135. To effect such a seizure an officer must have probable cause.
 {¶ 15} As the Fourth Amendment guarantees are not implicated in consensual encounters, any voluntary responses given during such an encounter may be used against the individual in the course of a criminal prosecution. Harvey, supra, at *2 citingMendenhall, 446 U.S. at 559-560.
 {¶ 16} In this case, Deputy Ferracane initially approached Appellee's vehicle in a public place to ensure the occupant's safety and to investigate the presence of the vehicle. Deputy Ferracane did not stop Appellee because Appellee's vehicle was already parked in the Denny's parking lot. After Deputy Ferracane pulled his cruiser up to Appellee's vehicle, Appellee exited his vehicle and started walking away from the officers. At this point, Deputy Ferracane asked Appellee what he was doing in the parking lot and Appellee stopped walking and replied that he was waiting for his girlfriend. Deputy Ferracane further questioned Appellee about why he was sitting in a parked car in the Denny's parking lot, Appellee did not respond. Deputy Ferracane then asked Appellee for photo identification and Appellee stated that he did not have any because his license had been suspended. Deputy Ferracane conducted a safety pat down so that he could place Appellee in his cruiser to issue a citation and to await a tow truck. During the pat down, Appellee gave consent to Deputy Ferracane to remove a small canister from his pocket that contained marijuana.
 {¶ 17} The State argues that an investigative stop occurred when Appellee exited the car, walked past the officers, and stopped to answer the officer's questions. Appellee argues that an investigative stop occurred when the officers first drove up to Appellee's car with the overhead lights flashing. We do not agree with either argument. A seizure does not occur when an officer "`merely approach[es] an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen[.]'" Cuyahoga Falls v. Sandstrom (June 21, 1995), 9th Dist. No. 17000, at *3, quoting Royer,460 U.S. at 497. Further, "[a] police officer does not necessarily seize the occupants of a parked vehicle through the activation of a police cruiser's overhead lights." State v. Brown (Dec. 10, 2001), 12th Dist. No. CA2001-04-047, at *3, citing State v. Johnston
(1993), 85 Ohio App.3d 475, 479.
 {¶ 18} During his initial conversation with Appellee, Deputy Ferracane did not use physical force, display a weapon, touch Appellee, use any language or tone to compel Appellee's responses, or otherwise indicate that Appellee's compliance with his request for information was compelled. The circumstances surrounding this questioning indicate that Deputy Ferracane and Appellee were engaged in a consensual encounter. Such encounters do not require that a police officer have a reasonable suspicion of criminal activity before making the approach. Sandstrom,
supra, at *3. The undisputed facts show that Appellee started to walk away from the officers and then voluntarily engaged in conversation with them when he was questioned. Further, Appellee chose not to answer some questions posed by the officers. It is clear from the trial court's finding of facts that Appellee felt he was free to walk away from the officers and that he was free not to answer their questions. Therefore, the Fourth Amendment protections were not implicated during the consensual encounter that led to Appellee's admission regarding his suspended license to Deputy Ferracane.
 {¶ 19} Appellee was not seized for Fourth Amendment purposes until Deputy Ferracane performed a safety pat-down search. "At its most unequivocal, a `seizure' occurs when `a police officer accosts an individual and restrains his freedom to walk away[.]' For example, when a police officer physically holds an individual and pats him down, that individual has been seized." Sandstrom,
supra, at *2, quoting Terry, 392 U.S. at 16-18. Therefore, when Deputy Ferracane patted down Appellee, the Fourth Amendment protections were implicated. Royer, 460 U.S. at 502-503. The Ohio Supreme Court has explained that the "frisk, or protective search, approved in Terry is limited in scope to a pat-down search for concealed weapons when the officer has a reasonable suspicion that the individual whose behavior he is investigating at close range may be armed and dangerous." State v. Andrews
(1991), 57 Ohio St.3d 86, 89.
 {¶ 20} It was only when Appellee admitted that his driver's license was suspended and Deputy Ferracane conducted a pat-down search that the seizure began. At this time, Deputy Ferracane had a reasonable and articulable suspicion of criminal activity. Appellee's admission, made during a consensual encounter, gave Deputy Ferracane reasonable suspicion that Appellant was driving under suspension, in violation of R.C. 4510.11. According to Deputy Ferracane's testimony, the pat-down search was conducted for the safety of the officers as they proceeded to place Appellee in the police cruiser to investigate the matter further.
 {¶ 21} It was during this lawful protective search that Deputy Ferracane felt a hard object in Appellee's left front pocket. According to Deputy Ferracane's testimony, he was concerned about this object because he did not know if it was a weapon or not. When he asked Appellee if he could take the object out of his pocket, Appellee consented. Consent to search must be voluntarily given, however it need not be knowing and intelligent as required for a waiver of rights. Schneckloth v. Bustamonte
(1973), 412 U.S. 218, 248-49. Consent is voluntary where, from the totality of the circumstances, it appears that the consent was not the product of governmental coercion. Id.
 {¶ 22} The testimony before the trial court was that Deputy Ferracane felt a hard object in Appellee's pocket and asked if he could remove it. Deputy Ferracane testified that Appellee gave his permission to conduct the search. When Deputy Ferracane removed the container he discovered what he thought was and what was later determined to be, marijuana. The record is devoid of any evidence indicating that Deputy Ferracane's request for consent led Appellee to believe that his compliance was required. Based upon the totality of the surrounding circumstances, this Court cannot conclude that Appellee's consent to the search was not voluntary. See State v. Arnold (Apr. 28, 1999), 9th Dist. No. 2884-M (holding Defendant voluntarily consented to officer's request to remove and search his wallet.) Therefore, Appellee's consent to search the container was voluntary and the evidence obtained should not have been suppressed.
 {¶ 23} Lastly, Appellant argues that the seizure of the marijuana found in Appellee's vehicle was proper pursuant to a valid inventory search. We agree.
 {¶ 24} Inventory searches are an exception to the search warrant requirement of the Fourth Amendment. Colorado v.Bertine (1987), 479 U.S. 367, 371. The United States Supreme Court has found inventory searches serve to protect the vehicle owner's property while it is in the custody of the police. SouthDakota v. Opperman (1976), 428 U.S. 364, 372. These searches serve to "insure against claims of lost, stolen or vandalized property and to guard the police from danger." Bertine,479 U.S at 372. This exception extends to containers located in the vehicle. Id. at 374. Further, the United States Supreme Court has held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy theFourth Amendment[.]" Id.
 {¶ 25} In the present case, Deputy Ferracane testified that he was going to tow the car because Appellee's license was suspended. Deputy Ferracane further stated that Sheriff Department policy required him to inventory the vehicle before it was towed. It was during this inventory search that Deputy Ferracane located a bag containing 465 grams of marijuana on the right rear floorboard of the car. There is no evidence in the record of bad faith, and thus we find that the inventory search was valid. Therefore, we conclude that the trial court improperly suppressed this evidence. Appellant's sole assignment of error is sustained.
 III. {¶ 26} Appellant's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.
Judgment reversed, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellee.
Slaby, P.J. concurs