[Cite as *State v. Payne*, 2012-Ohio-305.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | | |

| STATE OF OHIO | C.A. No. 11CA0029 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DEBORAH PAYNE | WAYNE COUNTY MUNICIPAL COURT COUNTY OF WAYNE, OHIO |
| Appellee | CASE No. TRC-11-03-02174 |

DECISION AND JOURNAL ENTRY

Dated: January 30, 2012

WHITMORE, Presiding Judge.

{¶1} Appellant, the State of Ohio, appeals from the judgment of the Wayne County Municipal Court, granting Appellee, Deborah Payne's, motion to suppress. This Court reverses.

I

{¶2} The incident giving rise to this appeal occurred on March 24, 2011, at approximately 2:00 a.m., but the details of the incident vary widely with regard to the witnesses who testified. Officer Brandon Lash testified to the following series of events. While on duty on the date in question, Officer Lash observed a black truck and recognized Payne as the driver of the truck based on her prior dealings with law enforcement. Officer Lash also recognized Payne's passenger and decided to follow the truck, as he was aware that the two women had ties to drug-related activity. In the course of following Payne's truck, Officer Lash observed three traffic violations. He opted not to stop the truck, however, as he believed it would be more productive to continue his investigation.

{¶3}    Officer Lash observed Payne pull into a driveway on Christmas Run Boulevard, stop her truck "abruptly," and quickly turn off her lights and engine.  Believing that Payne had engaged in evasive behavior, Officer Lash drove to a nearby street, parked his police cruiser, and walked back to the house where Payne had stopped.  He observed Payne and her companion at the door to the house, but then saw them turn to leave and walk northbound on Christmas Run Boulevard.  Officer Lash decided to initiate contact with Payne, so he returned to his vehicle and drove it to Christmas Run Boulevard.  Officer Lash saw Payne and her companion walking down the middle of Christmas Run Boulevard and stopped his cruiser behind them.  He then approached them on foot.  Officer Lash specified that he did not activate the lights on his cruiser or order Payne to stop.  He merely asked her "something to the effect [of] * * *, can I talk to you for a second * * *."  While speaking with Payne, Officer Lash detected a moderate odor of alcohol and asked her whether she had been drinking.  Payne admitted that she had had a few drinks as well as a Vicodin.  She then consented to a horizontal gaze nystagmus test.  Based on his observations and Payne's performance on the test, Officer Lash arrested Payne for operating a vehicle while intoxicated.  Payne submitted to a breathalyzer test and registered a blood alcohol content level of .085%.

{¶4}    According to Payne, she and her friend pulled into the driveway on Christmas Run Boulevard because Payne's boyfriend lived there.  Payne denied having committed any traffic violations on the drive to the house.  Further, although she noticed a police cruiser following her, Payne denied "abruptly" pulling into the driveway of the house.  Payne testified that she and her companion entered the house and "drank a couple of shots," but decided to call a cab and leave when it became clear that her boyfriend was upset.  She and her companion then left to walk down the road and wait for the cab.

{¶5} Payne testified that Officer Lash pulled his cruiser in front of her as she was walking, got out of the cruiser, and began talking to her about her son. Payne answered Officer Lash's questions about where she was going and whether she had been drinking because she did not feel that she could walk away. According to Payne, Officer Lash took her purse and searched it as he questioned her. She also testified that he refused to allow her to call a lawyer when she asked him if she could. Payne stated that the only drinks she consumed were the ones she had at her boyfriend's house after exiting her truck.

{¶6} Payne was charged with two counts of operating a vehicle while intoxicated, in violation of R.C. 4511.19(A)(1)(a) and 4511.19(A)(1)(d), respectively. Payne filed a motion to suppress, and the trial court held a hearing on the motion on June 6, 2011. On June 10, 2011, the trial court granted Payne's motion to suppress.

{¶7} The State now appeals from the trial court's judgment and raises one assignment of error for our review.

II

Assignment of Error

"THE TRIAL COURT ERRED IN GRANTING DEBORAH PAYNE'S MOTION TO SUPPRESS."

{¶8} In its sole assignment of error, the State argues that the court erred by granting Payne's motion to suppress. Specifically, the State argues that Officer Lash engaged Payne in a consensual encounter or, alternatively, had probable cause to initiate a stop. Because we conclude that the trial court failed to make sufficient factual findings, we reverse and remand for proceedings consistent with this opinion.

{¶9} The Ohio Supreme Court has held as follows:

Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19, (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997). *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.

Accordingly, this court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶10} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio Constitution, Article I, Section 14. This Court has identified three types of police encounters in the context of the Fourth Amendment: (1) consensual encounters; (2) investigatory stops; and (3) seizures that equate to an arrest. *State v. Patterson*, 9th Dist. No. 23135, 2006-Ohio-5424, ¶ 11. Consensual encounters do not trigger Fourth Amendment guarantees "unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." *Id.* at ¶ 12, quoting *State v. Taylor*, 106 Ohio App.3d 741, 747-748 (2d Dist.1995). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *United States v. Mendenhall*, 446 U.S. 544, 555 (1980).

{¶11} To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that

intrusion." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). A totality of the circumstances review includes consideration of "(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Biehl*, 9th Dist. No. 22054, 2004-Ohio-6532, ¶ 14, citing *Bobo*, 37 Ohio St.3d at 178-179.

{¶12} A seizure that equates to an arrest goes beyond a mere investigatory detention and requires the existence of probable cause. *Patterson*, 2006-Ohio-5424, at ¶ 14. "The existence of an arrest is dependent * * * upon the existence of four requisite elements: (1)[a]n intent to arrest, (2) under real or pretended authority, (3) accompanied by an actual or constructive seizure or detention of the person, and (4) which is so understood by the person arrested." *State v. Barker*, 53 Ohio St.2d 135 (1978), paragraph one of the syllabus. "Officers have probable cause to justify an arrest if 'from the information known to the arresting officers based on reasonably trustworthy information, a reasonably prudent person would be warranted in believing that the arrestee had committed or was committing an offense.'" *State v. Oliver*, 9th Dist. No. 24500, 2009-Ohio-2680, ¶ 10, quoting *State v. Scott*, 9th Dist. No. 08CA009446, 2009-Ohio-672, ¶ 11.

{¶13} This Court fully recognizes that in reviewing a trial court's suppression ruling, "we must defer to the credibility assessments of the trial court." *State v. McGinty*, 9th Dist. No. 08CA0039-M, 2009-Ohio-994, ¶ 22. The problem in this case is that the trial court failed to

make any credibility determinations. In its judgment entry, the court merely set forth the two inconsistent versions of the events here followed by these conclusions of law:

> Based upon all the circumstances outlined above, [Payne] had not committed any violations of law prior to Officer Lash's stop of her on March 24, 2011. There were no articulable facts to give Officer Lash a reasonable suspicion that [Payne] was involved in criminal activity to allow him to make contact with [Payne]. Therefore, all evidence obtained as a result of the stop/encounter that night is suppressed.

The court did not indicate that it found Payne more credible than Officer Lash or that it believed her version of the events. One might argue that the trial court found Payne more credible, given its conclusion that Payne did not commit "any violations of law." That conclusion is inconsistent with Officer Lash's testimony that Payne committed three traffic violations. Even so, Payne's version of the events, if believed, arguably supports a seizure equating to an arrest, not an investigatory detention. The fact that the court applied a reasonable suspicion standard rather than a probable cause standard suggests either that the court misapplied the law or disbelieved some or all of Payne's testimony. *See State v. McCraney*, 9th Dist. No. 09CA0079-M, 2010-Ohio-2667, ¶ 8-9 (setting forth the law that applies to investigatory detentions versus seizures equating to arrest). The law that applies here depends upon whose version of the events is to be believed, and the trial court failed to make any credibility determinations in the first instance.

{¶14} This Court faced a similar problem in *State v. Martin*, 9th Dist. No. 24812, 2009-Ohio-6948, ¶ 13-15. In *Martin*, we held as follows:

> Our review is hindered by the trial court's incomplete findings of fact. Although the trial court stated that Detective Zimcosky testified that Martin gave his statement voluntarily before any questions were asked and that Martin disputed this testimony, the court did not reconcile the conflict in testimony and make findings about what it believed happened. Instead, the trial court determined that the evidence is at best in equipoise, and the Defendants have not satisfied their burden to show a Constitutional violation occurred. It is imperative to this Court's application of law to the facts in this case that the trial court make a finding of credibility as to the disputed facts. Due to our limited standard of

review with regard to the facts, we are not permitted to fill in this gap. Because the trial court has failed to adequately set forth its findings of fact, we cannot properly apply the law. Accordingly, we must remand to the trial court to set forth its findings of fact with regard to the disputed testimony of the timing of Martin's statements to Detective Zimcosky. (Internal citations and quotations omitted.) *Martin* at ¶ 14.

This Court sustained the assignment of error in *Martin*, reversed the suppression judgment, and remanded the matter for further proceedings. *Id.* at ¶ 14-16. We conclude that *Martin* applies in this instance and reach the same result.

{¶15} Due to our limited standard of review in suppression appeals, we must reverse the trial court's judgment here and remand this matter for the trial court to set forth factual findings with regard to the disputed testimony. The State's sole assignment of error is sustained on this basis.

III

{¶16} The State's sole assignment of error is sustained for the reasons outlined above. The judgment of the Wayne County Municipal Court is reversed, and the cause is remanded for further proceedings consistent with the foregoing opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
BETH WHITMORE
FOR THE COURT

MOORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

DANIEL R. LUTZ, Prosecuting Attorney, and LATECIA E. WILES, Assistant Prosecuting Attorney, for Appellant.

ERIC D. HALL, Attorney at Law, for Appellee.