DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant Hans L. Hoder has appealed from a decision of the Wayne County Municipal Court that denied his motion to suppress. This Court affirms.
 I {¶ 2} On April 5, 2003, Appellant was charged with driving while under the influence of alcohol, in violation of R.C.4511.19(A)(1), and operating with a prohibited breath-alcohol content ("BAC"), in violation of R.C. 4511.19(A)(3), while on the corner of South Market Street and Henry Street in Wayne County, Ohio. Appellant subsequently filed a motion to suppress, wherein he argued that the arresting officer did not have a reasonable articulable suspicion of criminal activity when he stopped Appellant's vehicle. Appellant further contended that the arresting officer did not have probable cause to arrest Appellant for operating a vehicle while under the influence of alcohol. After conducting a hearing on Appellant's motion to suppress, the trial court denied the motion. The trial court stated that "[i]t is this writer's opinion that [the circumstances observed by the arresting officer] alone created sufficient suspicion of a DUI to justify the stop of [Appellant]." The trial court further found that "based upon the totality of the circumstances * * * the officer had a reasonable articulable suspicion of wrongdoing to stop [Appellant]. He also had probable cause to arrest for O.M.V.I."
 {¶ 3} On August 6, 2003, in exchange for the dismissal of the charge of driving while under the influence, Appellant pleaded no contest to the charge of prohibited BAC. As a result, Appellant was fined $600, plus court costs; sentenced to one hundred twenty days jail time; and his license was suspended for three years. Appellant filed a motion for stay of execution, which the trial court granted.
 {¶ 4} Appellant has timely appealed, asserting one assignment of error.
 II Assignment of Error
"The trial court erred as a matter of law when the court overruled [appellant's] motion to suppress and found that the stop of the [appellant's] vehicle was supported by a reasonable, articulable suspicion of criminal activity, and that the arrest of [appellant] was supported by probable cause, thereby violating [appellant's] right to be free from unreasonable searches and seizures as guaranteed by the fourth and fourteenth amendments to the United States constitution and Article One, Section Fourteen of the Ohio Constitution."
 {¶ 5} In Appellant's sole assignment of error, he has argued that the trial court erred when it denied his motion to suppress. Specifically, Appellant has argued that: 1) the arresting officer had no reasonable articulable suspicion to believe that Appellant was under the influence of alcohol when he stopped Appellant; and 2) the arresting officer did not have probable cause to arrest Appellant for driving while under the influence of alcohol. This Court disagrees.
 {¶ 6} An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. State v. Long (1998), 127 Ohio App.3d 328, 332. In reviewing the trial court's findings of fact, an appellate court must give due weight to inferences drawn from those facts by the trial court because the trial court is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Hopfer (1996), 112 Ohio App.3d 521, 548, appeal not allowed (1996), 77 Ohio St.3d 1488. Accordingly, an appellate court reviews a trial court's findings of fact only for clear error. State v. Russell (1998), 127 Ohio App.3d 414, 416. A trial court's legal conclusions, however, are reviewed by an appellate court de novo. Id.
 {¶ 7} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution prohibit unreasonable searches and seizures. State v. Kinney (1998),83 Ohio St.3d 85, 87, certiorari denied (1999), 526 U.S. 1007,119 S.Ct. 1148, 143 L.Ed.2d 214. Although the Fourth Amendment does not explicitly provide that violations of its provisions will result in suppression of evidence obtained as a result of the violation, the United States Supreme Court has held that the exclusion of that evidence is an essential part of theFourth Amendment. See Mapp v. Ohio (1961), 367 U.S. 643, 657,81 S.Ct. 1684, 6 L.Ed.2d 1081.
 {¶ 8} A traffic stop constitutes a seizure within the meaning of the Fourth Amendment. Whren v. United States (1996),517 U.S. 806, 809-810, 116 S.Ct. 1769, 135 L.Ed.2d 89. However, an investigative stop of a motorist does not violate theFourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner
(1999), 87 Ohio St.3d 295, 299, citing Terry v. Ohio (1968),392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889. "To justify a particular intrusion, the officer must demonstrate `specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Weisner,87 Ohio St.3d at 299, quoting Terry, 392 U.S. at 21. In evaluating these facts and inferences, the court must consider the totality of the surrounding circumstances. State v. Freeman
(1980), 64 Ohio St.2d 291, paragraph one of the syllabus, certiorari denied (1981), 454 U.S. 822, 102 S.Ct. 107,70 L.Ed.2d 94. "Thus, `if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.'" State v. Hunt
(Dec. 7, 1994), 9th Dist. No. 94CA005795, at 3, quoting State v.Shook (June 15, 1994), 9th Dist. No. 93CA005716, at 4, appeal not allowed (1994), 70 Ohio St.3d 1474.
 {¶ 9} After reviewing record before this Court, we find that the trial court did not err when it denied Appellant's motion to suppress. Included in the record was an affidavit signed by the arresting officer, Patrolman Kenneth R. Saal. In the affidavit, Patrolman Saal attested to the following:
"While I was on a call at the Market Grill I observed [Appellant] walk out of the bar unsteady on his feet. I observed [Appellant] get into a vehicle and travel [southbound] on [South] Market. I paced [the] vehicle at 40 mph on Spruce St. [Appellant] admitted to drinking beer. He had red[,] bloodshot eyes, moderate odor of an alcoholic beverage. He had [six] clues on the [Horizontal Gaze Nystagmus test]. He was unable to tell me what time it was."
 {¶ 10} Patrolman Saal also testified at the hearing on the motion to suppress. At the hearing, the officer testified to the following events that led to Appellant's arrest on April 5, 2003. At approximately 1:20 a.m. on April 5, 2003, Patrolman Saal was "down by the Market Grill" to "make sure that nothing else brewed up" when he noticed Appellant walk out of the Market Grill, which is a bar. The officer further noted that Appellant was "unsteady on his feet[,]" which is what "drew [the officer's] attention to him." Patrolman Saal explained that Appellant appeared "unsteady on his feet" because "[a]s you walk out of the bar, there is a step. You kind of stumble when you come out of the bar." The officer also testified that Appellant was "staggering" as he crossed the street, headed westbound. When asked what he meant by the term "staggering[,]" Patrolman Saal explained that "[n]ormally when you walk, it's pretty much in a straight line. If you had a straight line, it would be, he would go off to the left and to the right of it slightly."
 {¶ 11} After Appellant walked out of the bar, the officer observed Appellant get into a red Pontiac Grand Prix. Appellant then began to drive southbound on South Market Street. Patrolman Saal stated that he got into his police cruiser and followed Appellant. As the officer was pursuing Appellant, the officer:
"notice[d] [Appellant was] still Southbound on Market Street and [Appellant] made a right turn onto Spruce Street without using his turn signal. By the time [the officer] got up to [Appellant] it was around Vine Street, right where the bridge is at over 30, about where [the officer] caught up to [Appellant] and then [the officer] paced [Appellant] at 40 miles per hour in a short period of time. The speed limit is 35."
 {¶ 12} Patrolman Saal explained that he "paced" Appellant's vehicle by creating "an equal distance between the car in front of you and your car and you keep the same distance and you can also tell how fast they are going, a few miles per hour by how fast you're going. If you're keeping the distance between the [car] in front of you and your car traveling the same, you can determine how fast they are going." After the officer "paced" Appellant's vehicle, he activated his overhead lights and stopped Appellant's vehicle. As Patrolman Saal approached the vehicle, he observed Appellant turn down his car radio with a "kind of wobbly" gesture. The officer also stated that he noticed Appellant had bloodshot eyes and he could smell "a moderate odor of alcohol [sic] beverage coming from [Appellant's] breath."
 {¶ 13} When Patrolman Saal asked for Appellant's license and registration, Appellant appeared "kind of clumsy." The officer then asked Appellant if he had been drinking and Appellant told the officer that he had at least three beers. Patrolman Saal administered the horizontal gaze nystagmus test ("HGN" test) while Appellant sat in his vehicle. The officer stated that he observed a total of six clues after performing the HGN test. After conducting the HGN test, Patrolman Saal did not perform any more tests "[d]ue to the fact that it was the weather condition. It was raining heavily. [He] did not think that it was, as far as safety concerns and actually to perform a test, it could be done where it was at." However, based on the results of the HGN test, Patrolman Saal believed "there [was] a possibility that [Appellant was] under the influence of alcohol." Patrolman Saal then placed Appellant under arrest for driving while under the influence.
 {¶ 14} On cross-examination, Patrolman Saal admitted that using a radar or laser device to track the speed of a vehicle was more accurate than pacing a vehicle. Patrolman Saal also admitted that he learned how to perform the HGN test from a standing position, not a sitting a position as the test was performed on Appellant. The officer explained that there is no specific requirement, however, that the subject has to be standing when the HGN test is performed. The officer further explained on cross-examination that he believed it was necessary for Appellant to use a turn signal when turning from South Market Street onto Spruce Street.
 {¶ 15} Based on Patrolman Saal's affidavit testimony and his testimony at the hearing on Appellant's motion to suppress, this Court finds that Patrolman Saal had a reasonable articulable suspicion of criminal activity to stop Appellant's vehicle. The officer visually observed Appellant break the law by speeding. This fact alone was sufficient for Patrolman Saal to conduct an investigatory stop of Appellant's vehicle. Furthermore, the fact that the officer did not use a mechanical device to detect Appellant's speed does not make his testimony unreliable. This Court has previously held that "`a police officer's visual perception that a motor vehicle was speeding, coupled with years of experience, constitutes specific and articulable facts which provide the police officer with reasonable grounds to make an investigatory stop[.]'" State v. Dalchuk, 9th Dist. No. 21423, 2003-Ohio-4152, at ¶ 16, quoting State v. Porter (Sept, 15, 2000), 11th Dist. No. 99-P-0061, 2000 Ohio App. LEXIS 4211, at *10.
 {¶ 16} The officer also observed Appellant fail to use a turn signal. Appellant has argued, however, that "he was not required to use a turn signal. His lane of travel indicated that he must proceed at the Y intersection onto Spruce Street." This Court rejects this argument. After reviewing the photographs submitted into evidence, this Court concludes that a turn signal was required when making a right turn from South Market Street onto Spruce Street. Because Appellant failed to use his turn signal, the officer could have validly stopped him on this basis alone. See State v. Williamson, 9th Dist. No. 21147, 2002-Ohio-7320, at ¶ 11 (holding that an officer has reasonable suspicion to stop a vehicle for improper signaling). In sum, this Court finds that "[o]nce [Patrolman Saal] observed Appell[ant] violate Ohio traffic laws, he had the authority to stop Appell[ant] even if he chose to do so only on the ground that Appell[ant] appeared suspicious." Dalchuk, 2003-Ohio-4152, at ¶ 18.
 {¶ 17} This Court further finds that the officer had probable cause to arrest Appellant for driving while under the influence. The standard for "determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. In making this determination, we will examine the `totality' of facts and circumstances surrounding the arrest." (Citations omitted.)State v. Masek, 9th Dist. No. 03CA0016-M, 2003-Ohio-7189, at ¶ 5, quoting State v. Homan (2000), 89 Ohio St.3d 421, 427.
 {¶ 18} As previously stated, Patrolman Saal observed Appellant stumble out of a bar at 1:20 a.m. He also observed Appellant with red, bloodshot eyes; he noted that Appellant moved very clumsily; and he smelled the odor of alcohol on Appellant's breath. Appellant even admitted to having at least three beers. Furthermore, the officer observed six clues when he performed the HGN test upon Appellant. Based on these facts surrounding Appellant's arrest, we find that the trial court did not err when it concluded Patrolman Saal had probable cause to arrest Appellant for driving while under the influence of alcohol.[1]
 {¶ 19} For the foregoing reasons, we find that the trial court did not err in denying Appellant's motion to suppress. Appellant's sole assignment of error is not well taken.
 III {¶ 20} Appellant's sole assignment of error is overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, J. concurs.
CARR, P.J. CONCURS IN JUDGMENT ONLY.
[1] This Court has consistently held that an officer has probable cause to arrest a defendant for driving while under the influence when the defendant fails a sobriety test and the officer witnesses the defendant violate a traffic law, smells alcohol, and observes the defendant with red, bloodshot eyes. See, e.g., Masek, 2003-Ohio-7189, at ¶ 6-7; City of Akron v.Smith, 9th Dist. No. 21519, 2003-Ohio-5773, at ¶ 19; State v.Nichols (Apr. 21, 2002), 9th Dist. No. 01CA0037, at 5; State v.Scott (Nov. 21, 2001), 9th Dist. No. 20582, at 5; State v.Heard (Aug. 15, 2001), 9th Dist. No. 20445, at 7; State v.Tomko (Nov. 3, 1999), 9th Dist. No. 19253, at 8; State v.Snider (July 28, 1999), 9th Dist. No. 2924-M, at 6.