DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Defendant-Appellant Moriba Kali Ramsey has appealed from judgment in the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} On April 1, 2004 at approximately 11:00 a.m., Ohio State Trooper Mark Neff was patrolling the Ohio Turnpike in Lorain County. Amidst the heavy snow that began to fall, Trooper Neff observed a black vehicle traveling eastbound on the Turnpike. The vehicle's headlights were not on, and the vehicle itself had two forms of registration. From his position, Trooper Neff was not able to clearly see either registration. The vehicle's tinted windows prevented him from seeing *Page 2 
the registration in the back window. Additionally, the vehicle's license plate holder blocked a portion of the second registration from view.
 {¶ 3} Trooper Neff stopped the vehicle and asked the driver to exit while the two other passengers remained in the vehicle. He then asked the driver for his license, registration, and insurance. The driver, James Williams, was unable to produce any of these items. Williams told Trooper Neff that the car belonged to the front seat passenger's girlfriend. Williams also told Trooper Neff that he and the other passengers were returning from a trip to Michigan, where they had used the car for a week. Trooper Neff placed Williams in the back of his vehicle and asked dispatch to perform a check on Williams to see if he had a driver's license or any outstanding warrants. Although Williams did not have any warrants, dispatch was unable to find a valid driver's license for Williams in Ohio, Pennsylvania, or Michigan.
 {¶ 4} Trooper Neff walked back to the vehicle to converse with the front seat passenger, Moriba Ramsey. Ramsey told Trooper Neff that the vehicle actually belonged to his aunt, but he could not produce proof of this ownership. Ramsey also told Trooper Neff that the trip to Michigan had taken "a day or two." Suspecting that the vehicle might be stolen and involved in drug activity, Trooper Neff called for Trooper Robert Farabaugh and his drug dog Caesar. While waiting for Trooper Farabaugh, Trooper Neff had one of the passengers drive the vehicle to a Turnpike maintenance facility, which was approximately a quarter-mile away. *Page 3 
He did so to get the vehicle off the brim of the highway and to make room for Caesar's exterior sniff
 {¶ 5} Trooper Farabaugh arrived at the maintenance facility approximately twelve minutes after Trooper Neff s initial stop. At this point, Trooper Neff still had not determined whether Williams had a valid license or whether the vehicle's owner had given him permission to use the car. Trooper Neff conducted a pat down on Williams and found a small amount of marijuana. Trooper Farabaugh then directed Caesar to perform an exterior sniff of the vehicle, and Caesar alerted him to the presence of contraband. Trooper Neff searched the vehicle and found marijuana under the passenger's seat. He also found marijuana and more than 1,100 grams of crack cocaine in the vehicle's trunk.
 {¶ 6} On August 4, 2004, the grand jury indicted Ramsey of the following offenses: (1) possession of marijuana, a fifth degree felony pursuant to R.C. 2925.11(A); (2) possession of cocaine, a first degree felony pursuant to R.C. 2925.11(A); (3) trafficking in cocaine, a first degree felony pursuant to R.C. 2925.03(A)(2); (4) possession of cocaine, a fifth degree felony pursuant to R.C. 2925.11(A); and (5) trafficking in marijuana, a fourth degree felony pursuant to R.C. 2925.03(A)(2).
 {¶ 7} On October 17, 2006, Ramsey filed a motion to suppress, which challenged the basis for Trooper Neff s stop. Williams, Ramsey's co-defendant, also filed a motion to suppress on the same issue. On February 7, 2006, the trial *Page 4 
court held a joint hearing on the motions and ultimately denied them. Subsequently, Ramsey entered a no contest plea as to all five offenses. The trial court accepted his plea, found him guilty, and sentenced him to a total of ten years in prison.
 {¶ 8} Appellant has timely appealed his conviction, raising one assignment of error for review.
 II. ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED WHEN IT DENIED MR. RAMSEY'S MOTION TO SUPPRESS EVIDENCE OBTAINED AS THE RESULT OF AN UNREASONABLE SEIZURE AND SEARCH, IN VIOLATION OF THE FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTION."
 {¶ 9} Ramsey argues that the trial court erred in denying his motion to suppress because Officer Neff violated his right to be protected from unreasonable searches and seizures. Specifically, Ramsey argues that Officer Neff lacked probable cause or even reasonable suspicion to stop and detain the vehicle in which Ramsey was a passenger. We disagree.
 {¶ 10} In making its ruling on a motion to suppress, the trial court makes both legal and factual findings. State v. Jones (Mar. 13, 2002), 9th Dist. No. 20810, at *1. It follows that this Court's review of a denial of a motion to suppress involves both questions of law and fact.State v. Long (1998), 127 Ohio App.3d 328, 332. As such, this Court will accept the factual findings of the trial *Page 5 
court if they are supported by some competent and credible evidence.State v. Searls (1997), 118 Ohio App.3d 739, 741. However, the application of the law to those facts will be reviewed de novo. Id.
 {¶ 11} A traffic stop constitutes a seizure under theFourth Amendment. Whren v. United States (1996), 517 U.S. 806, 809-10. An investigative traffic stop does not violate the Fourth Amendment where an officer has reasonable suspicion that the individual is engaged in criminal activity. Maumee v. Weisner (1999), 87 Ohio St.3d 295, 299. To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. quoting Terry v.Ohio (1968), 392 U.S. 1, 21. A court must consider the totality of the circumstances in evaluating the facts and inferences supporting the stop. State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus. "[I]f the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop." State v. Hoder, 9th Dist. No. 03CA0042,2004-Ohio-3083, at ¶ 8, quoting State v. Shook (June 15, 1994), 9th Dist. No. 93CA005716, at *2.
 {¶ 12} An investigatory stop must last no longer than required to issue a citation or check the detainee's record. State v.Mootoosammy (July 25, 2001), 9th Dist. No. 3150-M, at *3. However, "if during the limited scope and duration of the initial stop an officer encounters additional specific and articulable facts that *Page 6 
give rise to a reasonable suspicion of criminal activity beyond that which prompted the stop, the officer may continue to detain the defendant to investigate those new concerns." Shook, supra, at *3, citing State v. Chatton (1984), 11 Ohio St.3d 59, 63 (holding that a driver may not be detained to investigate an issue other than that which precipitated the traffic stop absent some specific and articulable facts).
 {¶ 13} Trooper Neff established through his testimony at the suppression hearing that there were specific and articulable facts supporting his initial traffic stop. He witnessed several traffic violations, and those violations caused him to pull over the vehicle in which Ramsey was a passenger. Accordingly, we find that Trooper Neff was justified in making an investigative stop. See Hoder at ¶ 8.
 {¶ 14} The record further reflects that once Trooper Neff stopped the vehicle he uncovered new concerns that warranted his continued detention of the vehicle's passengers. See Shook, supra, at *3. He was unable to verify the owner of the vehicle for some time and the driver, James Williams, did not appear to have a valid license. He also received conflicting information as to the owner of the vehicle and the duration of Williams's and Ramsey's trip. See State v. Coleman, 9th Dist. No. 05CA0074-M, 2006-Ohio-5363 at ¶ 9 (finding that extremely similar facts did not amount to an unreasonable detention). The circumstances warranted Trooper Neff s suspicion that drugs might be involved, and this suspicion was soon confirmed by Trooper Farabaugh's drug dog. *Page 7 
Moreover, the entire detention from the time of the stop until the drug dog indicated a positive sniff on the vehicle lasted less than half an hour. Based on the foregoing, this Court cannot say that the trial court erred in denying Ramsey's motion to suppress based on the initial stop and his continued detention. See id. at ¶ 9-10.
 III. {¶ 15} Ramsey's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 8 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
CARR, P. J. MOORE, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.) *Page 1