DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Joshua Rackow was arrested for misdemeanor possession of marijuana and drug paraphernalia following a night out with friends in Wooster. When the car in which Mr. Rackow was riding was stopped by a police officer, Mr. Rackow sat quietly in the back seat. He produced proper identification when prompted, but did not otherwise interact with the officer. At the conclusion of the investigative stop, the officer asked the group in the car whether they had anything illegal. Mr. Rackow's companions immediately denied having any contraband, but Mr. Rackow did not respond to the question. In response, the officer pointed *Page 2 
his flashlight directly into Mr. Rackow's face and asked: "If I search you, will I find anything illegal?" Mr. Rackow then admitted to carrying some marijuana. He was ordered out of the car and the officer searched him. The trial court suppressed both the statement and the physical evidence discovered during the search. This Court affirms because both the statement and the physical evidence are the fruit of an illegal detention.
 FACTS {¶ 2} A police officer was dispatched to investigate a report of a suspicious car in the parking lot of an elementary school in the early morning hours of July 2, 2006. As the officer was approaching the school, he saw a car pull out of one parking lot and immediately pull into a tiny parking lot in front of the building. The officer pulled his car in behind the vehicle. It was not necessary to use his lights or siren because the size of the parking lot required the suspicious vehicle to stop as soon as the officer pulled his cruiser in behind it. The officer turned on his overhead spotlight to illuminate the interior of the vehicle, then approached and began talking with the driver.
 {¶ 3} Joshua Rackow was sitting in the backseat of the car and two of his friends were sitting in the front. The officer asked the driver questions about who was in the car, where they had been, and where they were headed. The young men explained that they were lost and waiting for another car of friends to catch up with them. The men had just decided to find their way home unassisted and the *Page 3 
driver pulled out of the school parking lot. He quickly realized that he had turned the wrong way onto the street, so he immediately pulled into the tiny lot in front of the school in order to turn around. Before the car could turn around, however, the police cruiser pulled in and blocked the path. The police officer testified that he believed the information he was told about who the men were, where they were headed, and why they had been waiting in the school parking lot at that hour. Mr. Rackow was not involved in that conversation. He sat quietly in the back seat, looking out the window.
 {¶ 4} As the officer spoke with the driver, he collected identification cards from each occupant of the vehicle. The officer testified that there were no problems with the identification cards. The men did not look dangerous. There was no indication that the driver was drunk or otherwise impaired. The officer testified that this conversation lasted three to five minutes, during which time he did not see or hear anything that caused him to be suspicious of any criminal activity. He testified the men in the car were "cooperative and friendly." Before ending the encounter, the officer asked the group in general whether there was anything illegal in the car. He testified that he asked this question, "just to see how they would answer." The two men sitting in the front of the vehicle immediately said, "no." Mr. Rackow did not respond to the officer's question.
 {¶ 5} The officer testified that it was at this point that his suspicion was aroused. He testified, "[a]t that point . . . after he failed to answer my question that *Page 4 
alerted me to the possibility that something was tak[ing] place, somebody had something on them illegal that they shouldn't have and that basically aroused my suspicion." The officer testified that he then turned toward Mr. Rackow, shined his flashlight toward him, and asked him directly whether he had anything illegal on him. Mr. Rackow testified that the officer's question directly to him was: "If I search you will I find anything on you, you shouldn't have?" The officer agreed that it was "possible" that after Mr. Rackow did not answer the first question that he may have "followed that up with the question, `If I were to search you would you really have anything on you?'" because he has "said that in the past." Based on this testimony, the trial court determined that the officer asked Mr. Rackow directly: "If I search you, will I find anything illegal?" Mr. Rackow testified that when the officer asked him the question directly, he was scared and believed he would be searched no matter how he answered. Mr. Rackow responded that he had some marijuana. The officer then ordered him out of the vehicle to search him. Mr. Rackow exited the vehicle and handed the officer a small bag of marijuana. The officer then searched him, finding another small bag of marijuana and a pipe. The officer testified that the sole reason for the warrantless search was probable cause based on Mr. Rackow's admission that he had some marijuana.
 {¶ 6} Mr. Rackow was charged with misdemeanor possession of drug paraphernalia and minor misdemeanor possession of marijuana. Mr. Rackow moved the court to suppress both the admission and the physical evidence *Page 5 
obtained as a result, arguing the search was based on an illegal detention and coerced confession. The trial court granted the motion finding that Mr. Rackow's confession was not voluntary. The State has appealed the trial court's order suppressing the statement and the physical evidence. This Court affirms the trial court's suppression of the statement and the physical evidence because Mr. Rackow was the subject of an illegal seizure when he admitted to carrying marijuana and the probable cause for the search flowed directly from that admission.
 STANDARD OF REVIEW {¶ 7} A motion to suppress presents a mixed question of law and fact:
 When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.
State v. Burnside, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8
(citations omitted); But see, State v. Metcalf, 9th Dist. No. 23600,2007-Ohio-4001, at ¶ 14 (Dickinson, J., concurring).
 INVESTIGATIVE DETENTION {¶ 8} The Fourth Amendment to the United States Constitution protects people from unreasonable searches and seizures. The Ohio Constitution contains a *Page 6 
similar provision. Ohio Const. art. I, sec. 14. Generally, people may not be seized within the meaning of the Fourth Amendment unless the police officer has probable cause to arrest the person for a crime.Florida v. Royer, 460 U.S. 491, 498 (1983). There is, however, a limited exception to this rule. An investigative stop, supported by an officer's reasonable suspicion of criminal activity, does not violate theFourth Amendment. State v. Taylor, 9th Dist. No. 16686, 1994 WL 395616, at *2 (July 27, 1994). Reasonable suspicion requires only that the officer "point to specific, articulable facts which, together with rational inferences from those facts, reasonably warrant the intrusion."Id. (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). An investigative stop may last no longer than necessary to accomplish the initial goal of the stop. State v. Ramsey, 9th Dist. No. 06CA009074, 2007-Ohio-6687, at ¶ 12. The officer may not continue the detention for reasons unrelated to the initial purpose of the stop, unless he discovers additional specific and articulable facts that give rise to a reasonable suspicion of criminal activity. State v. Robinette, 80 Ohio St. 3d 234, paragraph one of the syllabus (1997); State v. Shook, 9th Dist. No. 93CA005716,1994 WL 263194, at *3 (June 15, 1994). The reasonableness of the officer's actions in making an investigatory stop must be evaluated in light of the totality of the circumstances. Taylor, 1994 WL 395616, at *2 (citing State v. Freeman, 64 Ohio St. 2d 291, paragraph one of the syllabus (1980)).
 CONSENSUAL ENCOUNTER *Page 7 {¶ 9} A police officer does not violate the Fourth Amendment by simply approaching a citizen in a public place in order to ask a few questions.State v. Robinette, 80 Ohio St. 3d 234, 240 (1997) (citing Florida v.Royer, 460 U.S. 491, 497 (1983)). This type of consensual encounter does not require either probable cause or reasonable suspicion and does not constitute a seizure under the Fourth Amendment. Florida v. Royer,460 U.S. 491, 497 (1983); State v. Llanderal-Raya, 9th Dist. No. 04CA0079-M,2005-Ohio-3306, at ¶ 20. "The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. He may not be detained even momentarily without reasonable, objective grounds for doing so; and his refusal to listen or answer does not, without more, furnish those grounds." State v. Robinette, 80 Ohio St. 3d 234, 240 (1997) (quotingFlorida v. Royer, 460 U.S. 491, 497-98 (1983) (citations omitted)). Provided the citizen is free to walk away and neither listen to the officer nor respond to his questions, the encounter is consensual.Id. "Any voluntary responses given during a consensual encounter may be used against an individual in the course of a criminal prosecution."State v. Llanderal-Raya, 9th Dist. No. 04CA0079-M, 2005-Ohio-3306, at ¶ 21 (quoting Akron v. Harvey, 9th Dist. No. 20016, 2000 WL 1859838, at *2 (Dec. 20, 2000)).
 {¶ 10} A consensual encounter can quickly turn into a seizure of the person, requiring at least a reasonable, articulable suspicion of criminal activity. Id. at ¶ 20. A person is seized within the meaning of the Fourth Amendment when, in *Page 8 
view of the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." United States v.Mendenhall, 446 U.S. 544, 554 (1980). This type of seizure is accomplished "by either physical force or show of authority" that restrains the citizen's "liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Llanderal-Raya, 2005-Ohio-3306, at ¶ 20 (quoting Akron v.Harvey, 9th Dist. No. 20016, 2000 WL 1859838, at *1 (Dec. 20, 2000)). One example of such a circumstance, offered by the United States Supreme Court in United States v. Mendenhall, is if the police use "language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554. When a person is illegally seized in this manner and not warned of his Miranda rights, statements made will not be admissible at trial. Florida v. Royer,460 U.S. 491, 501.
 CONTRABAND QUESTION {¶ 11} Anytime a person is detained by the police on less than probable cause the detention "must be temporary and the investigative methods must employ the least intrusive means available."Robinette, 80 Ohio St. 3d at 240 (quoting Florida v. Royer,460 U.S. 491, 500 (1983)) (emphasis added by the Court in Robinette). InState v. Robinette, the defendant was stopped for a speeding violation and was given a verbal warning. At that point, the purpose of the initial traffic stop was fulfilled. Before returning to his cruiser, the officer *Page 9 
asked Robinette whether he was carrying any illegal contraband in his car. Robinette denied carrying any contraband. The officer then asked if Robinette would mind if he searched the vehicle and Robinette quickly agreed. The Ohio Supreme Court determined that, due to the public interest in reducing the drug trade, the officer was justified in continuing the detention beyond the verbal warning regarding speeding, just long enough to ask whether Robinette was carrying any illegal drugs. Robinette, 80 Ohio St. 3d at 241. According to the Court, however, the officer "did not have any reasonably articulable facts or individualized suspicion to justify Robinette's further detention in order to ask to search the car." Id. at 241. If, during the initial legal detention, the officer had developed additional articulable facts giving rise to a reasonable suspicion of criminal activity unrelated to the initial purpose of the stop, the officer could have legally extended the detention for further inquiry. Id. Without any such facts, the detention became illegal after the officer asked his first question about contraband. Id.
 THE INVESTIGATIVE DETENTION {¶ 12} In this case, the police officer had reasonable suspicion to justify an investigative stop of the car in which Mr. Rackow was a passenger. A citizen had called the police expressing concern about a suspicious car in the parking lot of an elementary school late at night. The caller indicated there were people in the car. The officer had sufficient reasonably articulable facts to approach the vehicle and *Page 10 
detain the occupants long enough to dispel that suspicion. The officer testified that the occupants of the vehicle all produced valid identification and acted friendly toward him. He believed the driver's explanation regarding the reason the car was in the parking lot at that hour. During that conversation, the officer did not see or hear anything suspicious to warrant further detention of the vehicle. Therefore, his initial purpose for the stop, to investigate the vehicle in the parking lot, was complete prior to his asking about drugs in the car.
 THE CONTRABAND QUESTION {¶ 13} The question is whether the officer was objectively justified, under the circumstances, in briefly continuing the detention to ask the group whether they had any contraband. The officer's question was similar to that asked of Robinette in the case discussed above. The Ohio Supreme Court determined that, in the interest of reducing the illegal drug trade, even in the absence of a reasonable suspicion of criminal activity, an officer may briefly detain a citizen to ask whether he is carrying illegal drugs or other contraband. Robinette,80 Ohio St. 3d at 241. "If during the initial detention to ask the contraband question, the officer ascertained reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id. If, however, the officer does not uncover facts giving rise to a reasonable suspicion of criminal activity, the citizen *Page 11 
"need not answer any question put to him." Id. at 240 (quotingFlorida v. Royer, 460 U.S. 491, 497-498 (1983)).
 {¶ 14} The next question is whether the officer was objectively justified in continuing the detention beyond the point when Mr. Rackow failed to answer the initial contraband question. Both the Ohio Supreme Court and the United States Supreme Court have held that if a citizen refuses to listen or respond to an officer who detains him without either probable cause or reasonable suspicion of criminal activity, the citizen's refusal to listen or respond to the officer alone cannot furnish reasonable suspicion for further detention and inquiry.Robinette, 80 Ohio St. 3d at 240 (citing Florida v. Royer, 460 U.S. 491,497-98 (1983)).
 {¶ 15} In this case, the officer reacted to a suspicion that was aroused only by the fact that Mr. Rackow did not immediately deny having anything illegal in his possession. The officer admitted he had seen nothing suspicious since approaching the vehicle and he had dispelled any suspicion created by the initial report of a car in the school parking lot. The officer never testified that he was concerned about weapons or any threat to his own safety. In fact, he testified that the men in the car did not look dangerous. The officer asked about drugs, "just to see how they would answer" and continued the inquiry directly with Mr. Rackow only because of Mr. Rackow's failure to immediately answer the question. The officer turned directly toward Mr. Rackow for the first time, shined his flashlight into his face, and asked him: "If I search you, will I find anything illegal?" The *Page 12 
form of the question implied that it was the officer who would decide whether Mr. Rackow would be searched. The officer asked: "If I search you, will I find . . . ?" This choice of words by the officer indicated that "compliance with the officer's request might be compelled."United States v. Mendenhall, 446 U.S. 544, 554 (1980). Mr. Rackow had already failed to answer the question aimed at the group and, in response, the officer had focused his attention, his flashlight, and his question, directly at him alone. The reasonable person in Mr. Rackow's position would not feel free to walk away from the officer at that point. Id. Mr. Rackow was sitting in the back seat of a car that was not able to move. Even if the driver had been willing to drive away while the officer was questioning Mr. Rackow, the police cruiser was parked so as to block the car. The interior of the car was lit by the large overhead spotlight the officer trained on the vehicle before approaching it. And the officer was shining a flashlight directly into Mr. Rackow's face and directing his question at Mr. Rackow specifically. The encounter became an illegal seizure at the moment the officer directly asked Mr. Rackow the question about illegal contraband.
 {¶ 16} The officer had no objective justification for detaining Mr. Rackow after he had dispelled the initial suspicion regarding the presence of the car in the school parking lot at night. When the officer asked the group whether they had any contraband, Mr. Rackow was free to "decline to listen to the questions at all and . . . his refusal to listen or answer [did] not, without more, furnish [sufficient] *Page 13 
grounds" to detain him further. State v. Robinette, 80 Ohio St. 3d 234,240 (1997) (quoting Florida v. Royer, 460 U.S. 491, 497-98 (1983) (citations omitted)). That freedom is the essence of a consensual encounter between a citizen and a police officer. The encounter became an illegal seizure of Mr. Rackow when the officer directed the next question at Mr. Rackow: "If I search you, will I find . . . ?" The circumstances, including the officer's choice of words, would have implied to the reasonable person that he was not free to walk away from the officer.
 {¶ 17} Mr. Rackow was being illegally detained at the time he admitted to carrying marijuana. Therefore, Mr. Rackow's statement is not admissible. Furthermore, the officer testified that the only reason he searched Mr. Rackow was probable cause based on Mr. Rackow's admission. As the probable cause for the search flowed directly from a violation of Mr. Rackow's right to be free from unreasonable seizures, the search was also illegal. Therefore, the fruits of that search were properly suppressed by the trial court. The State's assignment of error is overruled.
 CONCLUSION {¶ 18} The trial court's order suppressing Mr. Rackow's inculpatory statement and the physical evidence found on his person is affirmed. The legal investigatory detention of Mr. Rackow ended when the officer became satisfied that the young men in the car were telling the truth about why they were in the school parking lot late at night. During the initial conversation, the officer did not *Page 14 
discover any additional facts supporting a reasonable suspicion of criminal activity. Therefore, the period of legal detention ended. The officer was justified in briefly detaining the men further to ask if there was anything illegal in the car. Mr. Rackow's failure to answer that question, however, did not furnish reasonable suspicion to further detain him for additional interrogation or search. Thus, the evidence obtained during the ensuing illegal detention of Mr. Rackow must be suppressed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
 Costs taxed to appellant. *Page 15 
CLAIR E. DICKINSON FOR THE COURT
MOORE, J. CONCURS